Zella V. Statton v. Commissioner.
Statton v. Commissioner
Docket No. 2103-69 SC.
United States Tax Court
T.C. Memo 1969-250; 1969 Tax Ct. Memo LEXIS 43; 28 T.C.M. (CCH) 1278; T.C.M. (RIA) 69250; November 26, 1969, Filed. Kenneth C. Ellison, for the petitioner. G. Phil Harney and Walter O. Johnson, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the income tax of petitioner in the amount of $366.51 for the year 1966. At issue is whether petitioner, a schoolteacher, may deduct the cost of an around-the-world trip as a business expense. Findings of Fact Some of the facts are stipulated and *44 are incorporated herein by this reference. Petitioner, Zella V. Statton, resided in Tulsa, Oklahoma, at the time of the filing of the petition herein. She filed her Federal income tax return for the taxable year 1966 with the district director of internal revenue in Oklahoma City, Oklahoma. During 1966 petitioner was a teacher of Speech Arts in the fourth, fifth and sixth grades at the Burbank Elementary School, which is a part of the Tulsa Public School System. As of 1966 petitioner had been teaching school for approximately 44 years, and had been in the Tulsa Public School System since 1957. Petitioner held a Bachelor's degree and during 1966 she was at the top pay step for those having reached this level of education. Petitioner retired from regular teaching duties in May 1969. At the time of her retirement she was 66 years of age. As a speech teacher, petitioner developed her classroom instruction around the 1279 subjects being taught the students in other classes. Thus, the exercises and discussion topics used in her classes often correlated with matters studied in her students' other classes. The personnel regulations and salary schedules of the Tulsa Public School *45 System ("School System") contained "professional improvement" requirements which stated that all educational staff employees were required to "earn summer school credit at the rate of one semester hour per year or submit five semester hours of credit every fifth year or do equivalent work which is approved in advance by the assistant superintendent for personnel services." Employees who did not comply with this requirement, and who were not excused by the superintendent, were ineligible for the next increment on the salary schedule. If the employee not meeting this requirement had already reached the maximum on the salary schedule, he or she became subject to a salary reduction of one "increment" for each year he or she failed to comply with the requirement. There were several ways in which this requirement could be met. Credit was available by (1) attending the "Tulsa Conference on Education" during the summer; (2) attending a regular college or university during the school year or the summer; (3) supervising a student teacher for a certain length of time; (4) serving on a "summer curriculum production committee"; or (5) attending a workshop or engaging in foreign travel or other *46 experiences which were approved by the assistant superintendent for personnel services prior to the time the activity was begun. During the years prior to 1966 petitioner received her professional improvement credits by attending the Tulsa Conference on Education. As a result of her attendance at the Conference prior to 1966 the credits which she had accumulated were sufficient to satisfy the personnel requirements through the year 1966. However, they were not sufficient for 1967, and it was understood that the Conference would not be held during 1967. Accordingly, unless petitioner attended the Conference in 1966 or obtained her credit in some other manner, there was the possibility that she might be in default in respect of 1967. For the summer of 1966 petitioner planned to take an "around-the-world" tour sponsored by the University of Oklahoma Association. On April 1, 1966 and on April 8, 1966, she issued checks for $100 and $1,795, respectively, in payment for the trip. On April 11, 1966, petitioner wrote to the assistant superintendent for personnel services of the Tulsa Public Schools, Mrs. Ella Whitman ("Mrs. Whitman"), with respect to her travel plans. In her letter, *47 she explained that she had "been planning a rather extensive * * * trip abroad" for the summer of 1966 and that, because of the date of the trip, she could not attend the 1966 summer Conference on Education. She noted that even though she did not have to attend the Conference during 1966, she would have to do so in 1967; however, she noted that no Conference was scheduled to be held in 1967. Petitioner concluded her letter with the request that she be permitted to postpone her required attendance for a year, take an inservice course during the next year, or be permitted to write a report of her trip. Mrs. Whitman responded to petitioner's letter by a letter dated April 12, 1966. That letter stated Mrs. Zella Statton Burbank Elementary School
Tulsa, Oklahoma
Dear Zella: This will acknowledge your recent letter regarding plans for a trip abroad this coming summer. I am so pleased that you are going to have such a wonderful experience. Regarding your summer school requirement, I would suggest that you let it go for the time being. It may be that through an inservice course you can make up the additional credit which you will need to earn before the next Conference on Education. *48 In the event you are not able to do so, it would be possible to arrange a postponement by setting it up at the time you need it. At least, I would say don't worry about it this summer, and think of the inservice during the next school year. It has just occurred to me that your travel might be a means of adding the credit which you will need before the next Conference. If you would like to call me sometime and tell me what you are planning to do, perhaps I could give you an idea if travel credit would be possible. With kind personal regards. Sincerely yours, (Mrs.) Ella Whitman Assistant Superintendent for Personnel Services EW:cs 1280 By letter dated April 30, 1966, petitioner described her travel plans to Mrs. Whitman. Mrs. Whitman replied in a letter dated May 3, 1966 that credit for petitioner's trip would be possible depending upon the length of time spent outside the continental United States and the submission of a brief report upon her return. On June 11, 1966, petitioner began a 35-day around-the-world tour sponsored by the University of Oklahoma Association. The itinerary included short visits to ten foreign countries and Hawaii. While on the tour, petitioner *49 visited many of the well-known tourist attractions in and around the cities of Lisbon, Athens, Istanbul, Beirut, Jerusalem, Cairo, New Delhi, Agra, Benares, Calcutta, Bangkok, Hong Kong, Kyoto, Tokyo, and Honolulu. The trip was not designed for any particular vocation and little time was available to the participants for activities other than tightlyscheduled sightseeing. Upon her return, petitioner submitted a short report on her trip to the assistant superintendent for personnel services. In her report, petitioner briefly listed the places visited during her 35 days outside the continental United States. Her report expressed the hope that her experiences and observations would be of benefit in dealing with many of the subjects being studied by her students. In respect of the report submitted, the Tulsa Public School System granted her five semester hours of credit toward the summer school requirement. During her trip, petitioner took slides and made notes concerning the places visited. Upon her return to her teaching duties she attempted to enliven classroom discussions by sharing her travel experiences with her students. On occasion she showed some of her slides to her students. *50 During 1966 the Tulsa Public School System had an unpublicized policy of not requiring teachers over the age of 60 to comply with the professional improvement requirements. In accordance with this policy, the salaries of teachers over 60 were not affected by the failure to satisfy the summer study requirements. Though this policy was contrary to the printed regulations of the School System, which purported to apply to "all" educational staff employees, the officials of the School System did not wish to publicize this exception to its regulations and thereby discourage teachers over 60 from continuing their educations. Thus, teachers over 60 did not become aware of this policy unless or until they failed to meet the summer credit requirement. At the time petitioner planned and made her trip she was unaware of the School System's policy. No effort was ever made by the School System to inform her that she would not be held to the summer credit requirement. Petitioner claimed an education expense deduction of $1,978.06 in her 1966 income tax return for her trip around the world. The Commissioner disallowed this deduction and stated the following in his letter of deficiency: (a) The *51 deduction of $1,978.06 claimed for educational expense is not allowed because you have failed to establish that the expenditure was undertaken primarily for the purpose of maintaining or improving skills required by you in your employment, or of meeting the express requirements of your employer, or the requirements of applicable law or regulations imposed as a condition to the retention by you of your salary, status, or employment. Therefore, your taxable income is increased in the amount of $1,978.06. Opinion RAUM, Judge: Petitioner seeks to deduct the expenses of her summer 1966 around-the-world tour as an "ordinary and necessary" business expense under section 162(a)(2), I.R.C. 1954. [1] She claims that by taking her trip she maintained and improved her skills as a schoolteacher and thereby became a better and more effective teacher. She also argues that her trip was made to fulfill the professional improvement requirements of the Tulsa Public School System. The Commissioner contends that the cost of petitioner's trip is a nondeductible personal expense. We agree with the Commissioner. *52 1281 Both parties rely on the regulations under section 162[2] which permit, in certain circumstances, the deduction of expenditures made for education. The general rule of Regs. section 1.162-5(a) provides: § 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) * * * are deductible as ordinary and necessary business expenses * * * if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. *53 Regs. section 1.162-5(d) deals specifically with instances where the education in issue is in the form of travel. This section, which is controlling here, provides: (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties *54 of the individual in his particular position. (Emphasis supplied.) Finally, Regs. section 1.162-5(e), [3] in dealing with the deduction of travel expenses where a person "travels away from home primarily to obtain education", provides that "if as an incident of such trip the individual engages in some personal activity such as sightseeing * * *, the portion of the expenses attributable to such personal activity constitutes nondeductible personal * * * expenses * * *" And "[if] the individuals travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible." *55 Petitioner argues that her trip was "directly related" to her duties as a schoolteacher, and thus complied with the requirements of Regs. section 1.162-5(d). We disagree. Petitioner's tour was not designed by its originators to aid or benefit members of the teaching profession nor did petitioner strike off on her own to examine areas of particular interest to her profession. Petitioner's 35-day trip was actually no more than a short, whirl-wind tour of many of the world's best known tourist attractions. She spent no more than several days in each of the ten countries visited and substantially all of her time was 1282 devoted to conventional sightseeing activities. In short, petitioner's "activities on [her] trip were not different from those reasonably expected of any other tourist of [her] age on a sightseeing trip abroad * * *", and deduction of expenses therefor were [was] not justified merely because "foreign travel would be culturally broadening and therefore of benefit not only to the taxpayer individually but also to the [school] because of the potential increase in [her] teaching accomplishment." Dennehy v. Commissioner, 309 F. 2d 149, 150 (C.A. *56 6), affirming a Memorandum Opinion of this Court. We do not doubt that petitioner's observations and experiences abroad were of educational value to her; nor do we doubt that she used every opportunity, in and out of the classroom, to relate her travel experiences to others. The fact remains, however, that petitioner's trip was essentially a personal vacation which did not bear the "direct" relationship to her employment contemplated by the regulations quoted above. Her travels were of no more direct benefit to her teaching position than various other personal experiences of a memorable nature. Cf. Adelson v. United States, 342 F. 2d 332 (C.A. 9); Fugate v. United States, 259 F. Supp. 398 (W.D. Tex.), affirmed per curiam 386 F. 2d 188 (C.A. 5); Dennehy v. Commissioner, supra. Nor is the requisite "direct" relationship of petitioner's travel to her employment established merely because the Tulsa Public School System finally awarded her five "credits" for her trip. The regultions explicitly state that "approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements *57 for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position." To be sure, it is often difficult to draw a clear line between those expenditures which are directly related to one's employment and those which are essentially personal. This is especially difficult where, as here, the activity in question involves the kind of personal experience which necessarily spills over into one's employment activities. Lines, however, must be drawn, and, on the basis of the facts presented here, we find that petitioner's travel did not bear that direct relationship to her employment required by the regulations. [4]
Finally, petitioner's travel expenses were not in fact incurred to meet the express requirements of her employer. The evidence shows in this respect that *58 she had made arrangements for her trip by April 11, 1966, at a time when it appeared doubtful whether the trip could be used for this purpose. The record shows that she had decided to take the trip in any event and that the credits finally allowed were in the nature of a windfall to her. Further, we think that petitioner's reliance on the general provisions of Regs. section 1.162-5(a)(2), which permits a deduction for educational expenses made to meet the express requirement of an employer, is misplaced. Those general provisions must be read in the light of the provisions of Regs. section 1.162-5(d), which deal specifically with travel, as a form of education, and our finding that petitioner's expenditures were personal in nature under the terms of these latter specific provisions makes the general provisions of section 1.162-5(a)(2) inapplicable. Accordingly, we need not consider the effect of the unpublicized policy of the Tulsa Public School System to excuse teachers over the age of 60 from complying with the professional improvement requirements. Decision will be entered for the respondent. 1283 Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
2. Comprehensive new regulations were issued in Amy 1967 (T.D. 6918, 1967-1 C.B. 36), which differed in many respects from the regulations theretofore in effect. The excerpts quoted herein are from the new regulations. By Rev. Ruling 68-191, 1968-1 C.B. 67↩, 68, taxpayers were given the option to rely on either the new or the old regulations in respect of years beginning before January 1, 1968. Petitioner's brief in the present case relies upon the new regulations and, accordingly, we do not consider the old regulations herein.
3. § 1.162-5 Expenses for education. * * * (e) Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sightseeing, social visiting, or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends upon all the facts and circumstances of each case. An important factor to be taken into consideration in making the determination is the relative amount of time devoted to personal activity as compared with the time devoted to educational pursuits. The rules set forth in this paragraph are subject to the provisions of section 162(a)(2)↩, relating to deductibility of certain traveling expenses, and section 274(c) and (d), relating to allocation of certain foreign travel expenses and substantiation required, respectively, and the regulations thereunder.
4. In situations like the present that are essentially factual in nature it is often possible to find close cases on both sides of the line. Cf. L.C. and Gladys M. Greenlee, 25 T.C.M. 875↩, which was decided prior to promulgation of the new regulations involved herein.