ARTHUR D. POSTMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Postman v. Commissioner
Docket No. 5103-71.
United States Tax Court
T.C. Memo 1974-145; 1974 Tax Ct. Memo LEXIS 171; 33 T.C.M. (CCH) 649; T.C.M. (RIA) 74145; June 10, 1974, Filed. David A. Pravda, for the petitioner. Richard M. Campbell, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $933.78 in petitioner's Federal income tax for 1966. The sole issue for decision is whether petitioner is entitled to deduct as an educational expense his cost of travel through Europe and North Africa, which petitioner claims was directly related to his employment as an architect. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner's *172 legal residence was in White Plains, New York, at the time of filing the petition herein. He filed a Federal income tax return for 1966 as a single individual with the district director of internal revenue, New York, New York. Petitioner graduated from Yale University in 1956 with a bachelor of architecture degree. Except for two years of military service and the extended period of travel reflected below, petitioner has since been employed as an architect for various architectural firms and now practices as a self-employed architect. He was licensed as an architect in Massachusetts in 1961, in New York in 1963, and in Vermont in 1973. At the beginning of 1969, petitioner decided to leave his job at an architectural firm in Connecticut, without any arrangement as to his reemployment there, and travel abroad for an extended period. Petitioner originally intended to travel around the world but after commencing the trip found that his finances were not equal to the intention. Petitioner flew to Luxembourg on January 29, 1969, traveled through Europe and the Maghreb, and returned to the United States by ship on November 10, 1969. By the end of the same year, he secured employment *173 as an architect with a different firm in Connecticut, where his work primarily involved the architecture of commercial buildings such as shopping centers. Prior to his departure for Europe, petitioner planned a general itinerary of places to visit during the course of his travels, including noted points of architectural interest about which he had previously studied. Petitioner did not, however, plan any systematic program of research or study intended to maintain or improve his skills as an architect. His preparation for the trip did not significantly differ from the itinerary which any tourist would prepare prior to a vacation trip, perhaps making a special point to visit those places having a particular connection with his vocation or avocation. The parties have stipulated to a chronological schedule of the countries and cities which petitioner toured during the course of his trip through Europe and the Maghreb including points of claimed architectural interest which petitioner visited at some of those locations. Petitioner's wife (not an architect) accompanied him throughout these travels and his ten-year-old daughter by a previous marriage accompanied them for one month *174 of the travel. Petitioner did not keep any written diary or other written record of his travels. He did, however, take about 500 photographic slides at the places he visited. About 200 of the slides were pictures of construction techniques and other architectural details, which likely would not be photographed by the normal tourist. About 100 more were pictures of famous buildings and monuments such as might be photographed by the normal tourist. The balance of the slides were pictures of scenery and other non-architectural subjects. Petitioner indexed the 200 slides of architectural details during his return voyage to the United States and occasionally referred to them in the practice of his profession. In the joint Federal income tax return for 1969 which he filed with his wife, petitioner claimed a deduction of $4,050 as an educational expense for the cost of his trip through Europe and Maghreb from January 29, 1969 to November 10, 1969. He computed the deduction as follows: 20,000 miles at 10 cents
$2,000
plane
200
boat
200
room and board
1,500
books and supplies 150
Total
$4,050
None of the amount claimed is attributable to the travel expenses *175 of petitioner's wife or daughter. The plane and boat figures represent the entire cost of petitioner's passage from and to the United States. The $150 for books and supplies includes the cost of the photographic slides which petitioner took during the trip. Petitioner estimates that two-thirds of the time on his trip was devoted to viewing buildings and other points of architectural interest. In an Application for Tentative Refund from Carryback of Net Operating Loss, petitioner claimed a net operating loss of $4,050 resulting from the educational expense deduction he claimed for 1969 and he applied for a tentative refund from the carryback of such net operating loss to his taxable year 1966. Respondent refunded $933.78 to petitioner as a result of such application. By a statutory notice of deficiency, respondent later disallowed petitioner's claimed educational expense deduction and determined a deficiency in petitioner's income tax for 1966 equal to the amount previously refunded. OPINION The issue for decision is whether the expenses incurred by petitioner on a trip through Europe and North Africa are deductible as ordinary and necessary business expenses. Petitioner *176 contends the trip was undertaken primarily to maintain and improve his skills as an architect and was directly related to his employment in that capacity. Respondent asserts that the trip was a personal expense and therefore not deductible. We agree with respondent.
Petitioner traveled through Europe and the Maghreb for some nine and one-half months in 1969, during which trip he visited various points of claimed architectural interest. The deductibility of petitioner's travel expenses turns on the factual question of whether or not the major portion of the activities in which he engaged during his travel was of such a nature as to directly maintain or improve the skills required of him in his employment. George W. Gino, 60 T.C. 304, 309 (1973), on appeal (C.A. 9, Dec. 28, 1973); Stanley Marlin, 54 T.C. 560, 565 (1970); section 1.162-5(d), Income Tax Regs. See also Manoel Cardozo, 17 T.C. 3 (1951). Petitioner has failed to establish that the major portion of his trip consisted of activities which directly maintained or improved his skills as an architect. Instead, the evidence presented leaves us with the strong impression that petitioner *177 and his non-architect wife planned and executed the trip for the purpose of pleasure and recreation. In petitioner's own words, he and his wife simply "decided to see the wonders of the world, and did so, and that was the essence of the trip." There is nothing in the record to indicate that their activities were anything other than standard tourist fare. Petitioner visited places of claimed architectural interest, but these places all seem to have been usual tourist attractions and petitioner has not shown that he toured them with anything other than the casual and superficial manner of the vacationing sightseer. Petitioner no doubt observed what he saw with a trained professional eye, and his observations may well have led to some valuable professional insights useful in his work as an architect, but such incidental benefits are hardly sufficient to turn the costs of a personal vacation trip into deductible business expenses. See Adelson v. United States, 342 F.2d 332, 335 (C.A. 9, 1965); Cross v. United States, 336 F.2d 431, 434 (C.A. 2, 1964); Dennehy v. Commissioner, 309 F.2d 149, 150 (C.A. 6, 1962), affirming T.C. Memo. 1961-151. *178 Petitioner testified that he derived from his trip abroad a new understanding and appreciation of various styles of architecture, which he had been unable to acquire from his previous education and professional experience. He further testified that these influences from his travel have been useful in his subsequent work as an architect. While we do not doubt the sincerity of such testimony, it does not change our opinion that petitioner's activities during the trip were for the most part recreational and did not directly maintain or improve his professional skills. Likewise, petitioner's photographic activities were primarily personal rather than business-related. More than half the slides he took were of the standard tourist variety, which petitioner did not even bother to index for ready reference in the practice of his profession. [1] Moreover, petitioner presented no proof of the extent or manner of his use of the 200 slides of architectural details which he did index for possible use in his profession.
*179 Because of our conclusion that petitioner's travel expenses are not deductible as ordinary and necessary business expenses, we do not reach the question of whether petitioner adequately complied with the substantiation requirements of section 274(d) of the Internal Revenue Code of 1954. Decision will be entered for the respondent. Footnotes
1. Conceivably, an allocable portion of the $150 expenditure for "books and supplies" which was attributable to the 200 slides (see pp. 4-5, supra ) might have been deductible (cf. David N. Weiman, T.C. Memo, 1971-92↩), but we have no basis in the record herein for making such an allocation.